UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § § | |
| Plaintiff, | § § | |
| v. | § § | CASE NO. 4:15-cv-00300 |
| MIEKA ENERGY CORPORATION, VADDA ENERGY CORPORATION, DARO RAY BLANKENSHIP, ROBERT WILLIAM MYERS, JR., and STEPHEN ROMO, | § § § § § § | |
| Defendants. | § § § § | |

## DECLARATION OF WILLIAM D. WILSON

I, William D. Wilson, hereby declare, pursuant to 28 U.S.C. § 1746, as follows:

1. I have personal knowledge of the matters set forth herein, and if called as a witness, could and would competently testify hereto under oath.

2. I live in Denton, Texas, and am a retired member of the United States Air Force. I graduated with a BS in Business and Economics at Culver-Stockton College and a MBA in Management from Oklahoma City University.

3. In 2010, I was contacted via a telephone "cold call" by a salesperson, Jim Lockhart, on behalf of Mieka Energy Corporiation. I had no prior relationship with Mr. Lockhart, Mieka or Daro Blankenship, and in fact, had never heard of any of them. The salesperson asked me whether I would be interested in investing in an oil and gas production. I

told him I would be interested in evaluating what he had to offer. Documents were sent to me via Federal Express

4. The salesperson I spoke with left the company, and thereafter, my contacts were with Robert Myers and Daro Blankenship. My communication with them was by telephone and email. On two occasions, I meet with Daro Blankenship in his office.

5. In September 2010, I purchased ½ of a unit in the 2010 Mieka PA/WESTM/MARCELLUS PROJECT II ("2010-JV") for $79,200. I was not aware of the total amount of money that would be raised in the offering, other than the maximum amount listed in the offering materials. I did not have an understanding of what percentage I owned in the deal, other than the fact that I would own ½ of a unit.

6. At the time I made the original investment, I had no business experience in oil and gas drilling or in the operation and management of oil and gas business. I understood that I might lose the money I invested if the wells did not perform, but I had no experience in managing or directing a joint venture that would explore and drill for oil and gas. My understanding was that Mieka would manage the affairs of the 2010-JV. I had no expectation of making operational and management decisions. I understood and expected that I would not be managing the daily affairs of the 2010-JV.

7. The terms of the Joint Venture Agreement were presented as non-negotiable. Consequently, I did not negotiate any of the terms of the JVA or any of the other documents I received, such as the Confidential Information Memorandum ("CIM") or the Application Agreement. I was required to sign an Application Agreement at the time I made my investment. A copy of the Application Agreement I signed is attached hereto as Exhibit "A."

8. At the time I made the original investment, I believed that the money I invested would be considered assets of the JV and would be used for JV business only. In fact, the Application Agreement I signed (Exhibit A) states that "the funds tendered herewith shall be deposited to the general account of the Venture and shall be considered assets of the Venture and applied in accordance with the Joint Venture Agreement." At the time I invested, I was never told and had no understanding that the money would be commingled with other investor funds from other projects and used for purposes other than to run the 2010-JV.

9. After I gave my money to Mieka, I never had any control over my money again. I was not a signatory on any account relating to the JV, and had no access to JV funds. I had no ability to inquire as to the balance or otherwise review the bank statements.

10. At the time I invested, I did not know the identity of any of the other investors in the 2010-JV. Mr. Lockhart told me that he intended to invest or had invested in the 2010-JV. I also did not know how many investors there were.

11. On the one occasion when my vote was requested, I had no insight as to how many votes were cast only that the total votes received were unanimous, 7 were not returned and were counted against the proposal.

12. If I had known the identity of any other investor or if I would have been able to contact any other investor. It would been helpful to be able to talk about the business and concerns of the 2010-JV with other investors. The names and contact information of the investors was never disclosed.

13. Because Mieka made it impossible to connect with other investors, we had no ability to call a vote or to otherwise organize as a group. From my perspective, even if we, as

investors, could somehow learn each other's identities and organize a vote, our investment would be lost without Mieka as the manager because we were completely dependent upon Mieka to run the business and there was no money in the JV.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on September 1, 2016, in Denton, Texas.

*William D. Wilson*

William D. Wilson

**EXHIBIT B**

**APPLICATION AGREEMENT**

TO: MIEKA CORPORATION
1660 S. Stemmons Freeway, Suite 440
Lewisville, Texas 75067
**2010 MIEKA PA/ WESTM / MARCELLUS PROJECT II**, a joint venture to be formed under Texas law (the"Venture")

1. _Application._ The undersigned hereby applies to participate as a Joint Venturer (a "Participant") in the Venture to the extent of ___1/2___ (fill in number of Units) Units, in the amount of ~~$158,400 per~~ Unit, and 79,200 agrees to contribute as initial capitalization therefor the total sum of $ ___79,200.__ in cash. **Checks should be made payable to "2010 MIEKA PA /WESTM/ MARCELLUS PROJECT II SPECIAL ACCOUNT."**

2. _Acceptance or Rejection._ The undersigned understands that Mieka Corporation, the Managing Joint Venturer ("Mieka" or the "Managing Venturer"), in its sole discretion and for any reason, may accept or reject this Application and tender of initial capitalization, in whole or in part.

3. _Special Account._ The undersigned understands that the total amount submitted will be deposited in a Mieka Corporation account and will be promptly returned to the undersigned without interest if: (a) this Application has not been accepted and is subsequently rejected by the Managing Venturer as provided in the Joint Venture Agreement (the "Agreement"); or (b) capitalization of less than $792,000 is received from the sale of Units by the close of the Capitalization Period. It is understood and agreed that if this Application is accepted by the Managing Venturer and the Venture is fully capitalized by such date, the funds tendered herewith shall be deposited to the general account of the Venture and shall be considered assets of the Venture and applied in accordance with the Joint Venture Agreement. If the undersigned is allocated less than the number of Units applied for and the full amount for the Units has been timely paid in full, the Managing Venturer shall remit the balance of the full amount paid, if any, with interest, to the undersigned within 30 days after such partial acceptance of this Application Agreement.

4. _Information._ The undersigned acknowledges that: (1) the information received concerning participation in the Venture was made only through direct, personal communication between the undersigned and a representative of the Managing Venturer; (2) the undersigned has received and read a copy of the Confidential Information Memorandum (the "Memorandum") and the Joint Venture Agreement, including all exhibits and supporting documents thereto; (3) the undersigned has had the opportunity to obtain all additional information desired in order to verify or supplement the material contained in the Memorandum; and (4) the undersigned has been advised in writing by the Managing Venturer that a Participant must be prepared to bear the economic risk of such participation for an indefinite period because of (a) the nature of a venture in oil and/or gas exploration and development; and (b) the substantial restrictions on transfer of the Units as set forth in, among other documents, this Application Agreement and the Joint Venture Agreement. By executing this Agreement, the undersigned warrants and represents that the undersigned is financially able to bear the risk of losing his or her entire capital contribution.

5. _Execution of Agreement._ When accepted by the Managing Venturer, in whole or in part, this Agreement shall be valid and binding on the undersigned and the Venture for all purposes. The undersigned represents and warrants that the undersigned has received, read and understands the Joint Venture Agreement. The signature of the undersigned to this Application Agreement may be deemed for all purposes as the execution of the Joint Venture Agreement by the undersigned to the same extent and effect as if the undersigned has signed the Joint Venture Agreement on the date of the acceptance of this Application Agreement by the Managing Venturer. If requested, the undersigned agrees to execute the Joint Venture Agreement or a multiple original copy of such document.

6. _Restrictions on Transfer._ The undersigned understands and acknowledges that the Joint Venture Agreement contains certain provisions restricting the transfer of the Units applied for hereby and to which the undersigned will be bound. If this Application Agreement is accepted in whole or in part, the undersigned agrees that the undersigned will not sell or attempt to sell all or any part of the Units allocated to the undersigned unless he or she has complied with the restrictions on transfer contained in the Joint Venture Agreement.

7. _Indemnification._ The undersigned recognizes that the acceptance of his or her Application will be based upon his or her representations and warranties set forth herein and in other instruments and documents relating to the participation of the undersigned in the Venture, and the undersigned hereby agrees to indemnify, defend, protect and hold harmless the Managing Venturer and the Venture and each officer, director, agent, attorney and/or Participant thereof harmless from and against any and all loss, damage, liability or expense, including costs and reasonable attorneys' fees, to which they may be put or which they may incur by reason of, or in connection with, any

2010 Mieka PA/ WestM/Marcellus Project II
072610.0001

Exhibit B-1 of 4
Application Agreement

Initials here _____

misrepresentation made by the undersigned in this Application Agreement, the Questionnaire, or elsewhere, any breach by the undersigned of his or her warranties, and/or failure by him or her to fulfill any of his or her covenants or agreements set forth herein or elsewhere. In addition, any such breach shall result in forfeiture of his or her Venture interests.

8. <u>Confidentiality and Non-Solicitation Agreement</u>. The undersigned acknowledges and understands that upon his or her acceptance as a Venturer he or she shall come into possession of non-public, confidential and/or proprietary information which relates to the Joint Venture ("Confidential Information") including, but not limited to, information which relates to the individual Venturers as well as the business of the Joint Venture, and any other information which the Venture or Managing Venturer believes would be detrimental to the Venture or Venturers if disclosed to the public or to a third party (whether specifically designated by the Venture or Managing Venturer as such or otherwise).

The undersigned agrees that, in exchange for access to the Confidential Information and the rights to which the undersigned will be entitled as a Venturer, he or she will hold all Confidential Information in trust for the Venture and will not: (i) use the Confidential Information for any purpose other than the benefit of the Venture; or (ii) disclose to any person or entity any Confidential Information except when necessary for legitimate Joint Venture purposes.

The undersigned further agrees that, without the prior written consent of Mieka and/or other Managing Venturer, as applicable, the undersigned will not, directly or indirectly, for two years after the date he or she becomes a Venturer: (i) solicit, induce or attempt to solicit or induce any present or future employee of Mieka and/or such other Managing Venturer to terminate such employee's employment with Mieka and/or such other Managing Venturer; or (ii) do business with or attempt to do business with (in any capacity) any former employee of Mieka and/or other Managing Venturer who called on, serviced, did business with, had contact with, or provided Confidential Information to the undersigned during such employee's employment with Mieka and/or such other Managing Venturer.

The undersigned acknowledges and agrees that in the event of any breach of the above provisions the Joint Venture, Mieka and/or other Managing Venturer would be irreparably and immediately harmed and could not be made whole by monetary damages. Accordingly, the undersigned agrees that in addition to any other remedy to which the Joint Venture, Mieka and/or other Managing Venturer may be entitled at law or in equity, the Joint Venture, Mieka and/or other Managing Venturer shall be entitled to an injunction (without posting of bond and without proof of actual damages) to prevent further breaches of the above provisions.

9. <u>Entire Agreement</u>. This writing, along with the Memorandum (and exhibits attached thereto) and the Questionnaire, contains the entire agreement of the parties with respect to the matters contained herein, supersedes all oral agreements and representations, and may be changed, altered or amended only by a writing specifically referring to this Application Agreement and signed by the party against whom enforcement of the change, alteration or amendment is sought.

THIS SPACE LEFT INTENTIONALLY BLANK

2010 Mieka PA/ WestM/Marcellus Project II  
072610.0001

Exhibit B-2 of 4  
Application Agreement

Initials here

APP 00195  
MIEKA 006116

10. **APPLICABLE LAW.** THIS APPLICATION AGREEMENT WILL BE CONSTRUED ACCORDING TO THE LAWS OF THE STATE OF TEXAS, AND IS PERFORMABLE IN THE CITY OF DALLAS, DALLAS COUNTY, TEXAS. THE COURTS LOCATED IN THE STATE OF TEXAS, STATE OR FEDERAL, SHALL HAVE EXCLUSIVE JURISDICTION TO HEAR AND DETERMINE ALL CLAIMS, DISPUTES, CONTROVERSIES AND ACTIONS ARISING FROM OR RELATING TO THIS AGREEMENT AND ANY OF ITS TERMS OR PROVISIONS, OR TO ANY RELATIONSHIP BETWEEN THE PARTIES HERETO, AND VENUE SHALL BE IN THE COURTS LOCATED IN DALLAS COUNTY, TEXAS. THE UNDERSIGNED EXPRESSLY CONSENTS AND SUBMITS TO THE JURISDICTION OF SAID COURTS AND TO VENUE BEING IN DALLAS COUNTY, TEXAS. The prevailing party in any judicial proceeding relating to this Application Agreement will be entitled to an award of attorneys' fees, expert witness fees and all costs of the proceeding, which shall be paid by the non-prevailing party.

DATED: Sept 21 2010   Application for 1/2 Unit(s), at $158,400 per Unit, 79,200

**OWNERSHIP OF RECORD**

Home Phone: REDACTED
Office Phone: n/A
Cell Phone: REDACTED

*Signature of* Individual

William D. W. Ison
Printed Name for Ownership of Record

*Signature of* Co-Venturer

Email: REDACTED

Residence Address: REDACTED

Amt Enclosed: $ 79,200

City   State   Zip Code: REDACTED

Social Security: REDACTED

**PREFERRED MAILING ADDRESS**
*(If other than listed)*

SAME
Name

**OR**

Name of Business or Entity

*Signature and Title of* Representative

Street Address

Street Address

City   State   Zip Code

City   State   Zip Code

Identification Number *(Specify Type of Entity)*

2010 Mieka PA/ WestM/Marcellus Project II
072610.0001

Exhibit B-3 of 4
Application Agreement

Initials here